UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

LADONNA SMITHEE                                                    PLAINTIFF

V.                         NO. 3:17-CV-175-BD

SOCIAL SECURITY ADMINISTRATION                                     DEFENDANT

**ORDER**

**I.    Introduction:**

On August 24, 2015, LaDonna Smithee applied for supplemental security income benefits, alleging disability beginning on September 1, 2015. (Tr. at 19) Her claims were denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 37) Ms. Smithee requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Ms. Smithee filed this case seeking judicial review of the decision denying her benefits.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II. The Commissioner's Decision:

The ALJ found that Ms. Smithee had not engaged in substantial gainful activity since the alleged onset date of September 1, 2015. (Tr. at 21) At step two of the five-step analysis, the ALJ found that Ms. Smithee had the following severe impairments: borderline intellectual functioning, adjustment disorder with depressed mood, peripheral neuropathy, systemic lupus erythrematosus, and other arthropathies. (Tr. at 22)

After finding that Ms. Smithee's impairments did not meet or equal a listed impairment (Tr. at 23), the ALJ determined that Ms. Smithee had the residual functional capacity ("RFC") to perform the full range of work at the light exertional level, with some limitations. She could climb ramps and stairs occasionally, but could never climb ladders, ropes, or scaffolds. (Tr. at 29) She could occasionally balance, stoop, kneel, crouch, and crawl. *Id*. She could never work at unprotected heights or around moving mechanical parts. *Id.* Mentally, she would be limited to simple, routine, repetitive tasks, but could make simple work-related decisions. *Id.* She could work where supervision is simple and direct. *Id*. She could have only incidental interpersonal contact with co-workers and the public. *Id*.

The ALJ found that Ms. Smithee was unable to perform any past relevant work. (Tr. at 35) At step five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find, based on Ms. Smithee's age, education, work experience and RFC, that she was capable of performing work in the national economy as price tagger, which is light,

unskilled work, with an SVP of 2. (Tr. at 36) The ALJ determined, therefore, that Ms. Smithee was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009)(citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B. Ms. Smithee's Arguments on Appeal

In this appeal, Ms. Smithee contends that the ALJ's decision to deny benefits is not supported by substantial evidence. She argues that the ALJ erred by not finding her coronary artery disease to be a severe impairment. She asserts that the RFC provides for work that is beyond her functional capacity and that the ALJ erred by not including borderline intellectual functioning in the hypothetical posed to the VE. Finally, she contends that the Appeals Council erred by not considering records from Dr. Dickson.

The ALJ found, at step two, that Ms. Smithee's coronary artery disease was not a severe impairment. (Tr. at 22) The record shows that Ms. Smithee presented to Barry Tedder, M.D., in January 2015, complaining of shortness of breath. (Tr. at 344) Dr. Tedder diagnosed lupus and hyperlipidemia. (Tr. at 347) He ordered an echocardiogram and counseled Ms. Smithee on exercise and diet. (Tr. at 347)

The echocardiogram showed a ventrical ejection fraction of 60-65%, which is within normal range. (Tr. at 371-372) The aortic and mitral valve were normal in structure and function. (Tr. at 372) Ventricular systolic pressure was normal. *Id*. Normal examination findings such as these do not indicate that a claimant has a disabling condition. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

In February 2015, an angiograph showed minor left circumflex calcification, with no significant epicardial coronary stenosis. (Tr. at 366) The left ventrical ejection fraction was normal. *Id*. Ms. Smithee's cardiac examinations in April of 2015, August of 2015, January of 2016, August of 2016, and May of 2016, were all normal. (Tr. at 427, 456, 461, 598, 602, 621) In January 2016, a cath lab procedure revealed *mild* obstructive coronary artery disease with endothelial dysfunction. (Tr. at 666-669) Objective tests showing mild-to-moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

In August 2014, Ms. Smithee's doctor recommended exercise and noted that Ms. Smithee had declined physical therapy. (Tr. at 607) A physician's recommendation to

4

exercise suggests that Ms. Smithee had an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). And a failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005)

Ms. Smithee relies on two letters from Dr. Tedder to support her argument that her coronary artery disease was a severe impairment. But in the first letter, dated January 5, 2016, Dr. Tedder merely stated that Ms. Smithee had some angina with small vessel disease, but had normal coronaries. (Tr. at 554-555) He proceeded with a conservative course of medication management. *Id*. The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

In a July 2016 letter, Dr. Tedder identified mild conditions and suggested continuing medication management. (Tr. at 507) In July 2016, Dr. Tedder noted that Ranexa helped with angina, and noted lack of physical exercise as a problem. (Tr. at 595-599) Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). He recommended that Ms. Smithee return in one year. (Tr. at 596)

The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20

C.F.R. § 404.1521(a). A physical or mental impairment must last, or be expected to last, at least 12 months. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006). If an impairment has no more than a minimal effect on the claimant's ability to perform work, the impairment is not deemed a "severe" impairment. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). The objective testing results showing only mild impairment, her conservative treatment, and her positive response to medication all indicated that Ms. Smithee's coronary artery disease would have no more than a minimal effect on her ability to do work. The ALJ did not err in failing to identify Ms. Smithee's coronary problems as a severe impairment.

Ms. Smithee next argues that the RFC for light work exceeded her functional capacity. She did have a history of lupus and joint pain. But a January 2015 examination revealed no swelling in her joints and full range of motion in all joints. (Tr. at 450) Her doctor noted she was "doing well." (Tr. at 447) Ms. Smithee also reported doing well at an April, 2015 appointment. (Tr. at 420)

In May, 2015, Ms. Smithee had normal strength and sensation, with normal reflexes. (Tr. at 488) She was encouraged to exercise. Likewise, in August, 2015, she exhibited normal range of motion in all joints and no joint swelling or tenderness. (Tr. at 405) She had a positive ANA score for lupus, but no extremity weakness. *Id*. She refused a neurology referral. *Id*. Ms. Smithee complained of back pain in August of 2015, but on examination, she showed normal range of motion in her spine and normal muscle

6

strength and tone. (Tr. at 459-461) Her doctor continued with medication management. *Id.* By August of 2016, Ms. Smithee experienced only mild symptoms of lupus, and her laboratory tests were stable. (Tr. at 607) Her medications were somewhat effective for pain relief. (Tr. at 606) She was encouraged to exercise.

A claimant's RFC represents the most she can do despite the combined effects of all of his credible limitations, and it must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments, both severe and non-severe. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

Here, two state-agency medical consultants reviewed the medical evidence and assigned Ms. Smith an RFC for light work. (Tr. at 84, 124) The ALJ properly considered these opinions along with the objective medical evidence in assigning a light RFC. She even added postural limitations owing to Ms. Smithee's subjective complaints.

As for the mental RFC, Ms. Smithee focuses on the effect of her borderline intellectual functioning ("BIF") to argue that she could not perform the simple work described in the RFC. Indeed, Jerry Cunningham, Psy.D., the state-agency consulting examiner diagnosed BIF, but the ALJ accounted for that diagnosis in the RFC. Dr. Cunningham found that Ms. Smithee had good eye contact and was dressed

7

appropriately. (Tr. at 722) He found adequate speech and understanding, with a cooperative demeanor and adequate effort. *Id*. Dr. Cunningham opined that Ms. Smithee could cope with the mental demands of simple work, and could sustain concentration and attention. (Tr. at 725) He did not think she could sustain persistence to complete tasks, but noted that this limitation arose from physical, and not mental, conditions. *Id*.

Dr. Cunningham also found that Ms. Smithee was capable of performing activities of daily living: she could prepare meals, shop independently, share chores with her husband, and attend church three times a week. (Tr. at 59-62, 720) Such daily activities undermine her claims of disability with respect to both physical and mental conditions. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

The ALJ's hypothetical limited Ms. Smithee to simple, routine, and repetitive tasks; simple work-related decisions; simple, direct supervision; and incidental interpersonal contact with co-workers and the public. (Tr. at 29) In response to the hypothetical posed, the VE identified the job of price tagger, which has an SVP of 2, and is unskilled work. The SVP level listed for each occupation in the *Dictionary of Occupational Titles* ("DOT") indicates the time needed to learn techniques, acquire the information, and develop the facility needed for average work performance. At SVP level 1, an occupation requires only a short demonstration, while level 2 covers occupations that require more than a short demonstration, but not more than one month of vocational

preparation. *Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010); DOT app. C, at 1009 (4th ed. 1991).

The RFC in this case describes unskilled work. Unskilled work is not complex. *See* 20 C.F.R. §§ 404.1568(a), 416.968(b) SSR 83-10 (unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time"). The question is whether unskilled, simple work aligns with a diagnosis of BIF.

In a similar case, where an ALJ limited a claimant with BIF to simple and concrete work, the Court of Appeals for the Eighth Circuit found that "the ALJ captured the practical consequences of [the claimant's] low to average BIF." *Hillier v. SSA*, 486 F.3d 359, 366 (8th Cir. 2007). The *Hillier* Court cited to *Roe v. Chater*, where the claimant was diagnosed with low-average intelligence. *Roe v Chater*, 92 F.3d 672, 676-677 (8th Cir. 1996). The hypothetical in *Roe* limited the claimant to work that did not require close attention to detail, and the claimant was not capable of working at faster than a regular pace. Moreover, he required occasional supervision. *Id*. As in *Hillier*, the Eighth Circuit found that the hypothetical fully incorporated limitations attributable to low intelligence. *Id.* Here, the ALJ's hypothetical limited Ms. Smithee to simple, routine work, with direct supervision and incidental interpersonal contact. As in *Hillier* and *Roe*, the hypothetical here fully accounted for Ms. Smithee's limitations arising from BIF.

Ms. Smithee also contends that because the job of price tagger has a reasoning level of 2, it exceeds her functional capacity. This raises the issue of whether there is an

9

unresolved conflict between the VE's testimony and the job definition in the DOT. The ALJ must resolve any conflict made apparent by a VE's testimony. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); *see* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

The price tagger job requires marking, tying, gluing, sewing, and stapling, as well as recording types of items marked. DOT 209.587-034. Also, the price tagger may verify accuracy of tags and notify the supervisor of discrepancies. *Id*. He or she may print information on ticket using a ticket-printing machine. *Id*.

This description does not present complex work. The job is simple, with few variables. It is characterized as unskilled work. It requires a reasoning level of 2, which is the second-lowest reasoning level in the DOT. Level 2 reasoning requires that a person "apply commonsense understanding to carry out detailed but uninvolved written or oral instruction, and deal with problems involving a few concrete variables in or from standardized situations." DOT, app. C.

In a recent case, the Eighth Circuit reversed the district court's decision to affirm the ALJ's decision because the limitation to "1 to 2 step tasks" would not allow the claimant to perform work at a level 3 reasoning level. *Thomas v. Berryhill*, 881 F.3d 672 (8th Cir. 2018). Level 1 reasoning recites almost verbatim the *Thomas* ALJ's limitation to 1 to 2 step tasks, but level 3 reasoning requires a person to deal with problems involving several concrete variables. *Id*. at 677. The *Thomas* court found that the job identified was a full two levels above the hypothetical in complexity (level 3 vs. level 1), and that was a

bridge too far. *Id*. The *Thomas* case is distinguishable from the case at bar, however, because the hypothetical in *Thomas* limited the claimant specifically to "1 to 2 step tasks"—a more limited limitation than the limitation in this case—and the job identified in *Thomas* was more complex at reasoning level 3.

In a more analogous case, *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010), the job identified required level 2 reasoning, as in this case. In *Moore*, the hypothetical limited the claimant to "simple, routine, repetitive work at the unskilled task level," which closely matches the hypothetical in this case. *Id*. The identified job in *Moore* required level 2 reasoning and, because the ALJ did not specifically limit Moore to jobs with simple 1 to 2 step instructions, the Court found that the ALJ had contemplated jobs requiring level 2 reasoning.

The *Moore* Court focused on the term *uninvolved* in the definition of level 2 reasoning, finding that level 2 reasoning jobs may be detailed, but "not complicated or intricate." *Id*. The *Moore* court found no conflict between simple work and level 2 jobs, noting that the definition of level 2 reasoning "is an upper limit across all jobs in the occupational category, not a requirement of every job within the category." *Id*. As in the *Moore* case, the job identified by the VE here was not beyond the limitations assigned by the ALJ. There is no unresolved conflict at step five.

Finally, Ms. Smithee argues that the Appeals Council should have considered material submitted after the date of the ALJ's decision. The Appeals Council must

consider evidence submitted with a request for review if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (*quoting Williams v. Sullivan*, 905 F.2d 214, 216-17 (8th Cir. 1990)). The Appeals Council reviews the record as a whole to determine whether the new evidence would alter the outcome of the case.

The new records from the office of Brian Dickson, M.D., relate to a knee condition: an MRI showing significant bone bruising and a small meniscus tear. (Tr. at 46) Dr. Dickson found only mild tenderness and mild swelling, with an acceptable range of motion. *Id*. He noted that Ms. Smithee was better and was able to walk. *Id*. Ms. Smithee told Dr. Dickson that a knee injection had helped. *Id*. These mild findings do not indicate a worsening condition, and did not require further review of the ALJ's decision.

## IV. Conclusion:

Substantial evidence supports the Commissioner's decision to deny benefits, and there was no error. The new evidence submitted to the Appeals Council would not have changed the ALJ's decision. Thus, the finding that Ms. Smithee was not disabled within the meaning of the Social Security Act should be, and hereby is, AFFIRMED. This case is dismissed, with prejudice.

IT IS SO ORDERED this 26th day of June, 2018.

_____
UNITED STATES MAGISTRATE JUDGE